UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VINCENT RODRIGUEZ,

    Plaintiff,

v.                                                  Case No.:  2:23-cv-1103-SPC-DNF

KEVIN RAMBOSK, *et al.*,

    Defendants.

_____

## OPINION AND ORDER

Before the Court are two summary judgment motions: one filed by Defendants Delianys Morera, Brian N. Sudano, Matthew Perez, Michael Campbell, Robert Gelats, Joshua Robinson, and Jennifer Tucker (collectively, "Deputy Defendants") (Doc. 105), and another filed by Sheriff Kevin Rambosk (Doc. 106).  Plaintiff Vincent Rodriguez responded to each motion (Docs. 114, 115), and Defendants[1] replied (Docs. 121, 122).  For the reasons stated below, the Court grants in part and denies in part both motions.

## Background

This civil rights case arises from an arrest that occurred late at night outside a crowded bar.  The parties offer conflicting accounts of the events.  Although surveillance footage clarifies much of the incident, it does not tell the

---

[1] The Deputy Defendants and Sheriff Rambosk are collectively referred to as "Defendants."

whole story.   Below is a brief background based on undisputed facts and indisputable video footage.   Any factual disputes are detailed within each claim.

On the evening of November 28, 2020, Plaintiff, his brother Brandon Rodriguez ("Brandon"), and their friend Michael Dimaria visited Cavo Lounge, a bar in a Naples shopping plaza called Mercato.   Dimaria was inebriated and, after roughly ten to fifteen minutes, was kicked out of the bar.   Outside Cavo, multiple deputies from the Collier County Sheriff's Office issued Dimaria a trespass warning.   As they did so, Plaintiff entered the scene.   He walked up, stood next to Dimaria, and asked the deputies the basis for the trespass warning.   Less than a minute later, Sergeant Sudano pushed Plaintiff back into a fence and arrested him.   After Plaintiff was handcuffed, Sergeant Sudano, Deputy Perez, and Deputy Morera (collectively, "Mercato Deputies") escorted Plaintiff to the parking garage where Deputy Morera's vehicle was parked.   (Ex. 7 at 00:55–03:40).[2]

As Plaintiff and the Mercato Deputies approached the vehicle, Brandon ran up from behind, recording with his cellphone.  Seconds later, other deputies took Brandon to the ground and arrested him.[3]   While Brandon was on the

---

[2] Exhibit 7 is a video compilation of multiple surveillance camera angles: Mercato just outside Cavo, an alley leading to the parking garage, and the parking garage.

[3] Brandon's arrest is the subject of a separate pending lawsuit.  *See Rodriguez v. Rambosk, et al.* Case No. 2:23-cv-1102-SPC-DNF (M.D. Fla.).

ground, Sergeant Sudano and Deputy Morera struggled to put Plaintiff into the patrol car. They ultimately placed him in the backseat and closed the door. (*Id.* at 03:37–04:31; Ex. 11 at 00:19–01:07).[4]

Fast forward to the detention center. Plaintiff was placed in a holding cell. About two hours into his detention, Plaintiff began acting out. He tried ramming and kicking down the cell door, banged on the glass, and verbally taunted the deputies. He also covered the cell's surveillance camera with his clothes and otherwise attempted to manipulate it with his hands. Plaintiff was warned multiple times to stop messing with the camera. When he failed to listen, Deputy Campbell and Deputy Gelats sprayed Plaintiff with Oleoresin Capsicum spray ("OC spray") through a slot in the cell door. Subsequently, Plaintiff allowed himself to be handcuffed. Deputies Tucker and Robinson then connected Plaintiff's handcuffs to a restraint in the floor.[5] (Ex. 13 at 2:14:05– 2:30:30; Doc. 114 at 8 ¶ 59).[6]

Plaintiff was ultimately charged with disorderly intoxication in violation of Florida Statute § 856.011 and obstruction without violence in violation of § 843.02. He entered into a deferred prosecution agreement with the State

---

[4] Exhibit 11 is video footage from inside Deputy Morera's police vehicle.

[5] Deputies Gelats, Campbell, Robinson, and Tucker are collectively referred to as the "Jail Deputies."

[6] Exhibit 13 is video footage from inside Plaintiff's holding cell.

Attorney's office.    (Doc. 105-18).    Upon completion of the agreement's requirements, the charges were dismissed.  (*Id.*).

### Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact.  *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991).  If carried, the burden shifts to the nonmoving party to point out a genuine dispute.  *Id.*  At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).  That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## Analysis

Plaintiff brings claims against the Mercato Deputies in their individual capacities for false arrest and false imprisonment under 42 U.S.C. § 1983 and Florida law (counts I–IV) as well as malicious prosecution under § 1983 and Florida law (counts VIII and IX).  He sues the Mercato and Jail Deputies in their individual capacities for battery and assault under Florida law (counts V and VI), excessive force under § 1983 (count VII), and failure to intervene under § 1983 (count XII).

Turning to Sheriff Rambosk, Plaintiff brings two § 1983 official capacity claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) (counts X and XI), as well as claims for negligent supervision and training under Florida law (counts XIII and XIV).  Plaintiff also brings vicarious liability claims against Sheriff Rambosk for false arrest, false imprisonment, battery, and assault (counts I, II, V, and VI).[7]

At the outset, the Court notes Plaintiff abandoned several of his claims. Defendants seek summary judgment on Plaintiff's claims for malicious prosecution (counts VIII and IX), *Monell* (counts X and XI), and negligent

---

[7] Plaintiff improperly alleged these vicarious liability claims in the same count as his direct claims against the Deputies.  *See Smith v. Carnival Corp. & PLC*, No. 22-CV-22853, 2022 WL 16791783, at *3 (S.D. Fla. Nov. 8, 2022) (finding a count that comingled theories of vicarious and direct liability constituted the third type of shotgun pleading).  But Defendants never moved to dismiss the claims on this basis, and they do not address the issue in their summary judgment briefing.  So the Court ignores this defect.

supervision and training (counts XIII and XIV). Plaintiff never addressed these claims in his response. So they are deemed abandoned, and the Court grants summary judgment on such claims. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (explaining that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 626 (11th Cir. 2007) (finding no error in the district court's conclusion that the plaintiff abandoned her battery claim by making no argument in response to the defendant's summary-judgment motion on such claim). As for the rest, the Court first tackles the § 1983 claims followed by the various state law claims.

## I.    Section 1983 Claims

Plaintiff brings claims for false arrest and false imprisonment against the Mercato Deputies (counts III and IV), excessive force against the Mercato and Jail Deputies (count VII), and failure to intervene against the Mercato and Jail Deputies (count XII). The Court addresses each in turn. But because the Mercato and Jail Deputies raise qualified immunity as a defense, the Court first outlines that standard.

### A.    Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person

6

would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a defendant officer operated within the scope of his discretionary authority, the plaintiff bears the burden of "demonstrat[ing] that qualified immunity is not appropriate."  *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003)).

The parties do not dispute that the Deputy Defendants acted within the scope of their discretionary authority.  So Plaintiff bears the burden of proving "both (1) that the officers 'violated a statutory or constitutional right' and (2) 'that the right was clearly established at the time of the challenged conduct.'" *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1239 (11th Cir. 2024) (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)).

### B.    False Arrest under § 1983 (count III)

Plaintiff sues the Mercato Deputies in their individual capacities, claiming they violated his Fourth and Fourteenth Amendment rights by arresting him without a valid warrant, consent, or probable cause.  (Doc. 73 ¶¶ 97–102).  The Mercato Deputies argue they had actual probable cause to arrest Plaintiff for obstruction without violence under Fla. Stat. § 843.02 or, alternatively, are entitled to qualified immunity because they had arguable probable cause for the arrest.  Plaintiff responds that factual disputes exist as

to whether the Mercato Deputies had probable cause (actual or arguable) and, thus, qualified immunity and summary judgment are improper.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted). "Actual probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Davis v. City of Apopka*, 356 F. Supp. 3d 1366, 1375 (M.D. Fla. 2018) (citations omitted) (cleaned up), *aff'd*, 78 F.4th 1326 (11th Cir. 2023). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

An officer who makes an arrest or detention without actual probable cause is nonetheless entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006); *see also Brown*, 608 F.3d at 734 ("To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause."). "The standard for arguable probable cause is whether a

8

reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997). Qualified immunity allows ample room for mistaken judgments to prevent officials from erring on the side of caution due to a fear of litigation. *Id.* at 1446. A court looks to the totality of the circumstances to determine whether arguable probable cause exists. *Davis*, 451 F.3d at 763.

A plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). To do so, he must show that no reasonably objective police officer would have perceived there to be probable cause based on the totality of the circumstances. *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011). The existence of probable cause "constitutes an absolute bar" to a § 1983 claim for false arrest. *Rankin*, 133 F.3d at 1435.

With the standard established, the Court turns to the matter at hand. Plaintiff and the Mercato Deputies offer differing accounts of the events. Sergeant Sudano claims that as he was issuing the trespass warning to Dimaria, Plaintiff was yelling and causing a scene. (Doc. 106-3 at 22:2–5). He told Plaintiff to "hang tight" and the deputies would "get to him." (*Id.* at 33:17–34:1). Still, Plaintiff stepped into Sergeant Sudano "reactionary gap" with his

9

fists balled, his chest out, yelling, and getting louder. (*Id.* at 34:18–21, 35:8–12). He felt Plaintiff was too close. (*Id.* at 77:4–6). Sergeant Sudano maintains he asked Plaintiff to move back several times, but Plaintiff refused to comply. (*Id.* at 37:3–5). And at one point, Plaintiff raised his arm in a threatening gesture. (*Id.* at 36:5–16). According to Sergeant Sudano, Plaintiff's aggressive stance and disregard for several warnings to move back caused him to divert his attention from his lawful duty of issuing Dimaria the trespass warning. (*Id.* at 56:6–15). And Sergeant Sudano felt that if he did not preemptively act, "something was gonna happen." (*Id.* at 38:12—20, 91:14–19). So he arrested Plaintiff for obstruction.

Plaintiff tells a different story. He claims he located Dimaria outside of Cavo talking to several deputies. He approached Dimaria, quietly stood next to him for about twenty to thirty seconds, and then calmly asked the deputies the basis of the trespass warning. After he received no answer, he asked the deputies again. He was then arrested. (Doc. 105-1 at 66:19–23, 81:12–14). He maintains that no deputy ever instructed him to back up or give them space, and he never insulted or berated the deputies. (*Id.* at 63:22–25, 84:3–11, 86:7–10, 95:22–96:5). He simply sought clarification as to why Dimaria was being trespassed. (*Id.* at 95:22–96:5). And he claims that although he raised his arm, it was a "flinch" because the deputies touched him. (*Id.* at 89:12–13, 90:2–4, 90:16–18).

The surveillance footage, which has no audio, sheds some light on the incident. It shows several deputies with Dimaria outside Cavo. (Ex. 7 at 00:35–00:53). Plaintiff appeared to calmly join Dimaria and the deputies, who were standing in a circle. (*Id.* at 00:58). Plaintiff stood next to Dimaria for about twenty seconds, seemingly doing nothing but listening. (*Id.* at 00:58–01:22). Then, Plaintiff turned and addressed Sergeant Sudano. (*Id.* at 01:22). Although Plaintiff's hands are not clearly visible in the footage, his arms appear at his side, and his stance looks normal. Contrary to Sergeant Sudano's account, Plaintiff never stepped into Sergeant Sudano's face; just the opposite. The video shows Sergeant Sudano stepped toward Plaintiff. When Plaintiff did not back down, Sergeant Sudano pushed Plaintiff back and arrested him. (*Id.* at 01:22–01:40). Plaintiff engaged with Sergeant Sudano only for about eighteen seconds before the arrest. (*Id.*). Plaintiff raised his right arm over his head (*id.* at 01:34), but it is unclear if this movement was an act of aggression, a mere flinch, or something else.

Despite the Mercato Deputies' reliance on the video surveillance, the footage does not blatantly contradict Plaintiff's version of the events. As discussed, it does not clearly depict Plaintiff acting aggressively. And significantly, it is unclear whether Plaintiff was yelling or was instructed to back away from the scene because no audio is available. Thus, for purposes of this motion, the Court credits Plaintiff's version of the events. *See Castro-*

11

*Reyes v. City of Opa-Locka*, No. 24-12307, 2026 WL 318559, at \*1 (11th Cir. Feb. 6, 2026) (explaining the Court only accepts the videos' depictions "to the extent they are clear or obviously contradict" the plaintiff's version of the events); *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021) ("Where no video exists or where the videos do not answer all the questions or resolve all the details of the encounter, we view the evidence in the light most favorable to [the non-moving party]."); *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) (noting the silent video from a closed circuit security camera is "not obviously contradictory because it fails to convey spoken words or tone").

Adopting Plaintiff's version of the events, the Court addresses whether the Mercato Deputies had probable cause to arrest Plaintiff for obstruction without violence. Under this statute, "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." Fla. Stat. § 843.02. Section 843.02 contains two elements: "(1) 'the officer was engaged in the lawful execution of a legal duty'; and (2) 'the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty.'" *Baxter v. Roberts*, 54 F.4th 1241, 1266 (11th Cir. 2022) (quoting *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009)).

The parties do not dispute the first element is satisfied, given the Mercato Deputies were issuing a trespass warning to Dimaria at the relevant time. *See also Zivojinovich v. Barner*, 525 F.3d 1059, 1071 (11th Cir. 2008) ("[T]he deputies were lawfully executing their legal duty by informing [the plaintiff] that he was no longer allowed to be on the Ritz's property, escorting him out, and giving him a trespass warning."). So the key inquiry is whether a reasonable officer would believe Plaintiff's actions obstructed the Mercato Deputies' attempts to issue Dimaria a trespass warning.

"The standard of whether an officer has probable cause to believe that a violation of § 843.02 has taken place, or whether one has in fact taken place, lacks clearly defined bright lines." *Woods v. City of Plantation*, No. 04-60025-CIV, 2008 WL 763788, at *6 (S.D. Fla. Mar. 19, 2008). Still, the law is clearly established that an officer does not have arguable probable cause to arrest a suspect under § 843.02 without some physical act that interferes with or obstructs the officer's actions. *See Davis*, 451 F.3d at 765–66; *Olson v. Stewart*, 737 F. App'x 478, 482 (11th Cir. 2018) (quoting *Wilkerson v. State*, 556 So. 2d 453, 455–56 (Fla. Dist. Ct. App. 1990) ("The use of 'oppose' in conjunction with 'obstruct' manifests a clear and unambiguous legislative intent to proscribe only acts or conduct that operate to physically oppose an officer in the performance of lawful duties."). Although there are limited circumstances in which words alone can constitute obstruction, "the words must actually thwart

13

an officer from performing his official duties." *Thompson v. Mostert*, No. 6:10-cv-979-Orl-35GJK, 2012 WL 12950511, at *4 (M.D. Fla. Jan. 27, 2012), *aff'd*, 489 F. App'x 396 (11th Cir. 2012).

Viewing the facts in Plaintiff's favor, the Court cannot say the Mercato Deputies had even arguable probable cause to arrest Plaintiff for obstruction without violence. Plaintiff did nothing more than ask the deputies why they were issuing his friend a trespass warning. He was not confrontational, aggressive, or physical with the deputies. He did not even move before Sergeant Sudano pushed him back. Courts have found that circumstances more confrontational than this did not constitute probable cause for an arrest. *See Ford v. City of Boynton Beach*, 323 So. 3d 215, 220 (Fla. Dist. Ct. App. 2021) (finding no probable cause to arrest under § 843.02 when the plaintiff, in a confrontational manner, repeatedly questioned the officers why her son was being arrested while recording with a cellphone); *Ruizdelatorre v. City of Miami Beach*, No. 06-21183-CIV, 2007 WL 9702359, at *9 (S.D. Fla. June 26, 2007) (concluding the officers did not have even arguable probable cause to arrest the plaintiff under § 843.02 when the plaintiff followed the officers out of her apartment while repeatedly asking why they were arresting her roommate).

To be sure, the video surveillance does not show Plaintiff physically impeding the deputies' attempt to issue Dimaria a trespass warning. And

14

because the surveillance video has no audio, the Mercato Deputies cannot show that Plaintiff disobeyed an order to step away, "which Florida courts have required when the obstruction charge is premised on an individual's mere presence in an area of police activity." *Fuller v. Burrows*, No. 10-61414-CV, 2011 WL 13217014, at *4 (S.D. Fla. Oct. 31, 2011); *see also Ford*, 323 So. 3d at 227 (Artau, J., concurring) (no probable cause to arrest under § 843.02 when the plaintiff "never attempted to physically obstruct or in any way impede law enforcement's detention of her son, nor did she ever fail to follow any of their instructions").

The Mercato Deputies maintain that Plaintiff diverted their attention from Dimaria, constituting obstruction. This argument would be more compelling if the surveillance footage corroborated Sergeant Sudano's testimony that Plaintiff stepped into his face with clenched fists. *Cf. Bonett*, 2022 WL 17993850, at *7 (finding probable cause to arrest under § 843.02 because a reasonable officer would have believed the plaintiff was preparing to attack him). But it does not. In fact, the video shows Sergeant Sudano stepping toward Plaintiff. Viewing the facts in Plaintiff's favor, he simply questioned the basis for issuing Dimaria a trespass warning.[8] *See Davis,* 451

---

[8] Although the video clearly shows Plaintiff raising his hand into the air, the Mercato Deputies do not explain how this gesture amounted to obstruction. This lack of analysis is particularly problematic given the gesture occurred after the Mercato Deputies' attention was already diverted to Plaintiff.

15

F.3d at 766 (explaining "an owner's simple inquiry as to why officers are present on his property" cannot be construed as obstruction under § 843.02).

Even assuming Plaintiff's inquiry briefly diverted the deputies' attention, it is unclear how answering a relatively straightforward question prevented the Mercato Deputies from issuing a trespass warning, particularly when multiple deputies were present. *See id.* (finding no arguable probable cause for obstruction where the only consequence of the plaintiff's actions was that the officer had to "walk away from a traffic stop to see what [the plaintiff] wanted"); *Fuller*, 2011 WL 13217014, at *4 (observing the defendants failed to explain which duties were, or could have been, impacted when the plaintiff stopped and purposefully looped his car around to approach the officers while they were conducting a traffic stop of another). Indeed, the deputies were free to ignore Plaintiff. *See Ford*, 323 So. 3d at 228 (explaining the officers needed nothing from the appellant to execute their legal duty and thus "could have simply ignored appellant and proceeded with" such duty).

In sum, a genuine dispute of material fact exists as to whether the Mercato Deputies had even arguable probable cause to arrest Plaintiff. This precludes qualified immunity and summary judgment.

## C.    False Imprisonment (count IV)

Plaintiff brings a false imprisonment claim against the Mercato Deputies under § 1983. As with the false arrest claim, the Mercato Deputies rely on the

existence of probable cause to defeat this claim.  *See Cruz v. Green*, 352 F. Supp.
3d 1213, 1225 (S.D. Fla. 2019) (explaining false imprisonment claims under
§ 1983 "fail if there was probable cause for a plaintiff's arrest").  Given the
factual dispute over the existence of probable cause, Plaintiff's false
imprisonment claim survives.

### D.    Excessive Force (count VII)

Plaintiff's excessive force claim arises from two incidents: his initial
arrest and his detention in the holding cell.  The Court addresses each in turn.

#### 1.    Excessive Force During Arrest

Plaintiff argues the Mercato Deputies used excessive force during his
arrest.  He employs two theories.  He first asserts that no probable cause
existed for his arrest, so *any* use of force was excessive.  (Doc. 114 at 19).  The
Eleventh Circuit has characterized such a claim as an "artificial" excessive
force claim.  *See Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022)
(explaining an artificial excessive force claim asserts "that an officer's use of
force is excessive only because an arrest is not supported by probable cause").
But an artificial claim "is subsumed in the illegal stop or arrest claim and is
not a discrete excessive force claim."  *Id.* (citations omitted).  So the Mercato
Deputies are entitled to summary judgment on this theory.  *See DeRosa v.
Rambosk*, 732 F. Supp. 2d 1285, 1300 (M.D. Fla. 2010), *aff'd in part sub nom.
DeRosa v. Sheriff of Collier Cnty., Fla.*, 416 F. App'x 839 (11th Cir. 2011)

(granting summary judgment on artificial excessive force claim because it was subsumed within the unlawful arrest claim).

Plaintiff also brings a "genuine" excessive force claim, which is "a claim that—irrespective of an officer's probable cause to make an arrest—the officer used excessive force." *Richmond*, 47 F.4th at 1180. He argues Sergeant Sudano pushed him into the fence and leaned him over it without warning or justification; Sergeant Sudano punched him in the face with a hammer fist while placing him into the patrol car; and Deputies Morera and Perez "used force" when handcuffing, escorting, and placing him into the patrol car. (Doc. 114 at 19). The Mercato Deputies argue they used only de minimis force, entitling them to qualified immunity.

When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. An officer's use of force, however, violates the Fourth Amendment when it is objectively unreasonable under the facts and circumstances of a specific case, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Determining whether the force used to effect a seizure was objectively

18

reasonable requires case-by-case "balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *see also Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (same).

However, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). In other words, a minimal amount of force and injury will not defeat an officer's qualified immunity in an excessive force case. *See Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000).

The video surveillance tells the story. When the Mercato Deputies arrested Plaintiff, Sergeant Sudano pushed Plaintiff back into a fence, and then Plaintiff was handcuffed. (Ex. 7 at 01:39–3:00).[9] The Mercato Deputies walked Plaintiff from the bar to the vehicle without any incident. (*Id.* at 03:00–03:37). But when they approached the vehicle, Plaintiff's brother ran up from behind, recording with his cellphone, and was ultimately taken to the ground

---

[9] Although a potted tree obstructs the view of a portion of the arrest, Plaintiff does not argue any force used during the obstructed time frame was excessive. So this obstruction is immaterial.

by another deputy. (*Id.* at 03:38–03:51). Deputy Perez abandoned Plaintiff's arrest to aid the deputies attempting to arrest Plaintiff's brother.

While other deputies struggled to detain Brandon, Plaintiff resisted Sergeant Sudano and Deputy Morera's efforts to place him inside the vehicle (seemingly because he was desperate to help his brother). He pushed himself away from the vehicle as Deputy Morera and Sergeant Sudano tried to secure him inside, and he tried to turn his body away from the car to face his brother. (*Id.* at 03:43–04:31). Once these deputies managed to force Plaintiff's torso inside the vehicle (which was lying flat along the backseat with his legs still hanging out the car door), Sergeant Sudano pushed Plaintiff's head down. Sergeant Sudano and Deputy Morera then struggled to get Plaintiff's legs into the vehicle, and Plaintiff defied orders from Deputy Morera to "get in the car." (Ex. 11 at 00:33–1:06).[10]

The Court finds all force used was de minimis. Plaintiff argues it was unnecessary for Sergeant Sudano to shove him and lean him over the fence when making the arrest, given the minor charge of obstruction without violence. While it is true that "less force is appropriate for a less serious offense," the Eleventh Circuit has made clear that "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful,

---

[10] Audio becomes available at the one-minute mark in exhibit 11.

regardless of the severity of the alleged offense[.]" *Bass v. Jones*, No. 25-10261, 2025 WL 1529315, at *3 (11th Cir. May 29, 2025) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003)).  Simply because the force may have been unnecessary does not render it excessive if the actual force used and injury inflicted were both minor in nature.  *See Graham*, 490 U.S. at 397 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."); *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011) (finding no constitutional violation because "[e]ven if unnecessary, the force used against Croom was de minimus").

Even assuming Sergeant Sudano's conduct was not necessary to initiate the arrest, the force was minimal.  He simply pushed Plaintiff back into the fence.  *See Jones v. Ceinski*, 136 F.4th 1057, 1064 (11th Cir. 2025) ("An officer ordinarily does not use excessive force when he pushes a suspect into a wall to restrain him."); *Brown*, 608 F.3d at 740 ("For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls."). Plaintiff never left his feet, and he does not identify any injury inflicted.  The Eleventh Circuit has found force well beyond that presented here to be de minimis.  *Cf. Bryan v. Spillman*, 217 F. App'x 882, 886 (11th Cir. 2007) (the officer conducted a "rough search" of the plaintiff's genitals, pushed him against a patrol car and held his head down against the car); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1334–35 (11th Cir. 2004) (officer put a foot on the face of

21

the plaintiff, who was face down on the pavement, after he asked why he was being arrested); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (finding an officer who pushed a plaintiff against a wall and placed her in a choke-hold prior to placing her in handcuffs was not excessive force despite the fact that the plaintiff did not resist). So Sergeant Sudano's use of force to make the arrest was not excessive.

Plaintiff also argues Deputies Morera and Perez "used force when handcuffing, escorting, [and] placing [him] in the patrol car." (Doc. 114 at 18). But, as discussed, simply using force does not violate the Fourth Amendment; the force must be excessive under the circumstances. Plaintiff fails to identify what force he believes was excessive when he was handcuffed, escorted to the vehicle, or placed inside the vehicle. On this basis alone, he fails to demonstrate a violation of a clearly established constitutional right sufficient to overcome Deputies Morera's and Perez's qualified immunity.

To be sure though, a review of the video footage confirms neither Deputy Perez nor Morera used excessive force. To the extent Plaintiff believes he was handcuffed too tightly, courts "have repeatedly held that painful handcuffing alone doesn't constitute excessive force." *Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (11th Cir. 2019) (finding no excessive force when the female plaintiff complained the handcuffs were too tight, the officer replied they were "man handcuffs" and tightened them again, the plaintiff was left handcuffed in the

22

patrol car for as long as two hours, and the crime she committed was minor).

And after Plaintiff was handcuffed, the video shows the Mercato Deputies

walked Plaintiff to the car.  If any force was used, it was not excessive.

As for the force used to place Plaintiff into the patrol vehicle, Deputy

Morera and Sergeant Sudano simply pushed Plaintiff into the vehicle's

backseat.[11]   Such force was de minimis, particularly when considering the

circumstances.  The video shows Plaintiff actively resisting Deputy Morera and

Sergeant Sudano's efforts to place him in the vehicle.[12]   Tellingly, it took the

full might of two deputies to get Plaintiff in the backseat.  And given Plaintiff's

brother was also in a police scuffle only a few feet away, the deputies had every

interest in using force to quickly secure Plaintiff in the vehicle.  *See Bass*, 2025

WL 1529315, at *2 (finding the officer "did not use excessive force when he

pushed [the plaintiff] into the backseat of the police car" considering the need

to secure the plaintiff).

Finally, Plaintiff complains that Sergeant Sudano "punched" him in the

head with a closed fist.  But the video belies this notion.  Sergeant Sudano

---

[11] Although Plaintiff complains about the force used by Deputies Perez and Morera when placing him into the vehicle, Deputy Perez took no part in doing so.  He abandoned Plaintiff's arrest to aid the deputies arresting Brandon.

[12] Plaintiff disputes he was resisting.  He argues what is seen as resistance in the footage is really him struggling to fit into the under-sized vehicle given his large stature.  (Doc. 105-1 at 110:15–112:3, 124:11–24).  Even if this were true, the surveillance footage demonstrates that a reasonable officer at the scene could view Plaintiff's "struggle" as resistance.

23

pushed Plaintiff's head down with an open palm in his continued effort to place Plaintiff's entire body into the vehicle.  Even after Sergeant Sudano pushed Plaintiff's head, Plaintiff continued to defy repeated orders from Deputy Morera to "get in the car."  He instead left his legs hanging out the car door, which prevented Deputy Morera from closing it.  (Ex. 11 at 00:29–1:06).  And even if this force was unnecessary, it was minor and without any resulting injuries.

Because the Mercato Deputies used only de minimis force, Plaintiff has not established a constitutional violation.  *See Nolin*, 207 F.3d at 1258 ("[A] minimal amount of force and injury, as present in the facts of this case, will not defeat an officer's qualified immunity in an excessive force case.").  And even if Plaintiff had established a constitutional violation, he "does not cite any binding authority that supports that at the time of the incident it was clearly established that the amount of force employed by the officers violated the Constitution."  *Jarvis v. City of Daytona Beach*, 754 F. Supp. 3d 1197, 1227 (M.D. Fla. 2024), *aff'd sub nom.* No. 24-13456, 2026 WL 323259 (11th Cir. Feb. 6, 2026).  So the Mercato Deputies are entitled to qualified immunity on Plaintiff's excessive force claim, and the Court grants summary judgment in their favor on count VII.

## 2.    Excessive Force at Holding Cell

Plaintiff argues the Jail Deputies used excessive force while he was detained in the holding cell.  Because Plaintiff repeatedly tried to break down the cell door and manipulate the cell's video camera (despite multiple warnings to stop), Deputies Gelats and Campbell sprayed Plaintiff with OC spray through a slot in the cell door, and Deputies Robinson and Tucker secured him to the floor with a two-point restraint.  Plaintiff does not argue such force was excessive.  Rather, he claims that after he was already restrained, Deputies Gelats and Campbell sprayed additional OC spray directly onto his body and into the air, effectively "hotboxing" the cell.  (Doc. 114 at 26).  Considering he was already restrained, Plaintiff believes this additional use of OC spray was excessive.

The Jail Deputies, citing the video surveillance from inside Plaintiff's holding cell, argue this post-restraint spray never occurred.  Sure enough, the video footage shows the deputies restrained Plaintiff and then left the cell without spraying any additional OC spray.  (Ex. 13 at 02:27:30–02:30:31).  But Plaintiff maintains the deputies sprayed him through an opening in the cell door after they exited the cell.  Because the video only shows what occurred inside the cell, the post-restraint spray would not be visible on the video

footage.[13] (Doc. 105-1 at 199:5–200:21). This means the video footage does not contradict Plaintiff's version of the events, and the Court construes the facts in Plaintiff's favor. *See Gee*, 625 F.3d at 1315 (explaining the video "is often not obviously contradictory because . . . it sometimes fails to provide an unobstructed view of the events" so the court must credit the plaintiff's version of the events uncontradicted by the video).

Deputies Gelats and Campell are not entitled to qualified immunity at this stage. It is clearly established that an officer violates the Fourth Amendment, and is denied qualified immunity, when he uses gratuitous and excessive force against a suspect who has been fully secured and poses no threat. *See Johnson*, 18 F.4th at 1274 ("[O]ur circuit case law clearly established that an officer violates the Fourth Amendment when he uses gratuitous force against an arrestee who is fully secured, not resisting arrest, and not posing a safety threat to the officer."). Accepting Plaintiff's version of the events as true, Deputies Gelats and Campbell sprayed Plaintiff and the air of his cell with OC spray after he was already handcuffed and restrained to the

---

[13] This position is not unreasonable given the initial spray (which nobody disputes occurred) is not visible on-camera. So it is certainly possible that the disputed subsequent spray could have occurred off-camera as well.

However, it is troubling that at no point in Plaintiff's response does Plaintiff's counsel articulate that the subsequent spray purportedly occurred outside the cell or cite to the relevant portion of Plaintiff's deposition transcript in which he explains this position. Nor did he seek leave to file a sur-reply addressing this point. If not for the Court reviewing Plaintiff's deposition transcript in its entirety and identifying the relevant testimony—which it was under no obligation to do—Plaintiff counsel's shortcoming would have cost his client.

cell floor.[14]  He posed no danger to the deputies or himself, nor was there any risk Plaintiff would continue his destructive conduct.  On these facts, the Court denies Deputies Gelats and Campell qualified immunity and summary judgment.  *See Vinyard*, 311 F.3d at 1355 (concluding that the constitutional violation was obvious where the officer grabbed the arrestee by the hair and arm and applied pepper spray after she had been handcuffed and secured in the back of the patrol car); *Christie ex rel. estate of Christie v. Scott*, 923 F. Supp. 2d 1308, 1328 (M.D. Fla. 2013) (denying summary judgment on an excessive force claim where the evidence construed in the plaintiff's favor showed the plaintiff "was pepper-sprayed repeatedly, even after he was placed in a restraint chair").

That said, Plaintiff admitted Deputy Tucker did not touch him or spray him with any chemical agent.  (Doc. 105-16 ¶¶ 6–7).  And Plaintiff does not argue Deputy Robinson engaged in any excessive force, let alone produce evidence that he did.  So the Court grants summary judgment in Deputies Robinson's and Tucker's favor on count VII.  *See Scott*, 923 F. Supp. 2d at 1328 (granting summary judgment for two officers because there was no evidence that either "participated in or even ratified the conduct that constitutes excessive force in this case").

---

[14] The surveillance footage confirms Plaintiff was fully secured in a two-point restraint when the deputies exited the cell.

27

### E.    Failure to Intervene (count XII)

Plaintiff brings a failure to intervene claim under § 1983 against the Mercato and Jail Deputies.  He argues that each deputy could have stopped the excessive force but failed to do so.  (Doc. 114 at 25, 27).  "An officer can be held liable under 42 U.S.C. § 1983 for failing to intervene when a fellow officer uses excessive force if he or she is present at the scene and fails to take reasonable steps to protect the victim."  *Militello v. Sheriff of Broward Sheriff's Off.*, 684 F. App'x 809, 813 (11th Cir. 2017) (internal quotation marks and citation omitted).  "Therefore, an officer who is present at such a beating and fails to intervene may be held liable though he administered no blow."  *Id.* (citation omitted).

The Mercato and Jail Deputies argue they had no duty to intervene because none of them used excessive force.  "[T]he duty to intervene only arises when another officer uses excessive force."  *Hall v. McGhee*, 762 F. App'x 837, 840 (11th Cir. 2019) (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000)).  Because the Mercato Deputies did not violate Plaintiff's right to be free from excessive force, none of them had an obligation to intervene.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009).  So the Court grants summary judgment in the Mercato Deputies' favor on count XII.

As for the Jail Deputies, a factual dispute exists as to whether Deputies Gelats or Campbell used excessive force. Without any other argument from the Jail Deputies, the failure to intervene claim against them survives.

## II. State Law Claims

### A. False Arrest (count I)

Plaintiff brings a false arrest claim under Florida law against the Mercato Deputies and vicariously against Sheriff Rambosk. A false arrest claim under Florida law is substantially the same as one under § 1983. *Lopez v. City of Opa-Locka*, 788 F. Supp. 3d 1223, 1250 (S.D. Fla. 2025). "An officer may claim she had 'probable cause' to arrest as an affirmative defense to a Florida-law false arrest claim." *Id.*; *see also Gould v. Guerriero*, No. 24-12818, 2025 WL 1291659, at *5 (11th Cir. May 5, 2025) ("The existence of probable cause negates any inference of malicious intent or bad faith and constitutes an absolute bar to both state and § 1983 claims alleging false arrest.").

The Mercato Deputies and Sheriff Rambosk rely on probable cause to defeat the state-law false arrest claim. But "because the presence or absence of probable cause turns on disputed facts, summary judgment must be denied." *Lopez*, 788 F. Supp. 3d at 1251. And given Sheriff Rambosk's liability is derivative of the Mercato Deputies' liability, the factual disputes likewise preclude summary judgment for Sheriff Rambosk. *Id.*

### B. False Imprisonment (count II)

29

Similarly, Plaintiff brings a false imprisonment claim against the Mercato Deputies and vicariously against Sheriff Rambosk. "Under Florida law, false arrest and false imprisonment are simply two names for the same tort." *Id.* at 1250. As with a false arrest claim, probable cause is a complete bar to an action for false imprisonment. *See Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. Dist. Ct. App. 1996) ("[P]robable cause is a complete bar to an action for false arrest and false imprisonment[.]"). For the same reasons discussed above, Plaintiff's false imprisonment claim survives.

### C.    Battery and Assault (counts V and VI)

Plaintiff also brings state assault and battery claims against the Mercato and Jail Deputies and vicariously against Sheriff Rambosk. "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Pinto v. Collier Cnty.*, No. 21-13064, 2022 WL 2289171, at *7 (11th Cir. June 24, 2022) (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)). "We apply a presumption of good faith to law enforcement conduct, holding officers liable only where the force used is 'clearly excessive.'" *Id.* (quoting *Sanders*, 672 So. 2d at 47).

The Mercato Deputies' use of force was de minimis and reasonable under the circumstances, so it was not "clearly excessive" for purposes of Plaintiff's Florida battery and assault claims. So the battery and assault claims against

the Mercato Deputies fail.  *See id.*; *Lopez*, 788 F. Supp. 3d at 1248 n.16 ("[E]xcessive force claims under Florida law and section 1983 often rise and fall together." (citation omitted)).  The same is true for Plaintiff's battery and assault claims against Deputies Robinson and Tucker.  But the factual dispute as to whether Deputies Gelats or Campbell used excessive force precludes summary judgment for these two deputies and Sheriff Rambosk.

The Court grants summary judgment in favor of the Mercato Deputies and Deputies Robinson and Tucker on counts V and VI.  The claims otherwise survive.[15]

Accordingly, it is now

**ORDERED:**

1. The Deputy Defendants' Motion for Summary Judgment (Doc. 105) is **GRANTED in part and DENIED in part**.

    a. Summary judgment is **GRANTED** in favor of the Mercato Deputies as to counts V–IX and count XII.

---

[15] Although court decisions typically lump assault and battery claims together, "they are distinct torts with differing elements." *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1315 (M.D. Fla. 2010).  "Consequently, it does not follow that, simply because the battery claims survive summary judgment, the assault claims survive as well."  *Id.* (granting summary judgment on assault claim, but not battery claim, because the plaintiff failed to produce evidence "that he suffered an apprehension of immediate harmful or offensive conduct").  But in seeking summary judgment, Defendants do not distinguish between the assault and battery claims.  So both survive as outlined above.

b. Summary Judgment is **GRANTED** in favor of Deputies Robinson and Tucker as to counts V–VII.

c. Summary judgment is **DENIED** as to counts I–IV.

d. Summary judgment is **DENIED** for Deputies Campbell and Gelats as to counts V–VII.

e. Summary judgment is **DENIED** for the Jail Deputies as to count XII.

2. Sheriff Rambosk's Motion for Summary Judgment (Doc. 106) is **GRANTED in part and DENIED in part.**

a. Summary Judgment is **GRANTED** in favor of Sheriff Rambosk as to counts X, XI, XIII, and XIV.

b. Summary Judgment is **DENIED** as to counts I, II, V, and VI.

3. The Court refers this case to a settlement conference with United States Magistrate Judge Nicholas P. Mizell.

**DONE** and **ORDERED** in Fort Myers, Florida this March 2, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record